IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| EDDIE EUGENE BREWER, #723891 | § | |
|---|---|---|
| VS. | § | CIVIL ACTION NO. 6:14cv10 |
| WILLIAM STEPHENS, ET AL. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Eddie Eugene Brewer, a prisoner previously confined at the Michael Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights complaint pursuant to 42 U.S.C. § 1983.

The present Memorandum Opinion concerns Defendants Todd A. Foxworth, Garron Sherbert, and Ibukun Oyebade's motion for summary judgment limited to Plaintiff's failure to exhaust administrative remedies (docket entry #89). The Plaintiff has filed two responses (docket entries # 94 and #95 ).

### Facts of the Case

The Plaintiff filed his amended complaint on August 26, 2014 (docket entry # 50). In the amended complaint, he names the following Defendants: Todd A. Foxworth, Senior Warden of the Michael Unit; Ibukun Oyebade, a Correctional Officer at the Michael Unit; and Garron Sherbert, another Correctional Officer at the Michael Unit. *See* Amended Complaint at 1 (docket entry # 50). The allegations in the original complaint are brief and state:

> On July 15, 2013 while plaintiff was assigned to the Michael Unit, he was assaulted by five offenders in the day room while awaiting the PM meal. Plaintiff had notified Defendant Foxworth VIA grievance that plaintiff's life was in danger on that unit. The

1

> grievance was denied, and plaintiff was forced back into the general population. Defendant Foxworth failed to protect plaintiff from a substantual (sic) risk of serious harm. After being notified of the risk, plaintiff was assaulted. After the assault, plaintiff made it back to his cell where he past (sic) out on the floor in a pool of blood. Plaintiff was left like this during the night despite one roster count and five normal counts took place, or was supposed to have taking place. Defendant's (sic) I. Oyebade & G. Sherbert violated plaintiff's 1st, 8th, and 14th amendment rights.

*See* Amended Complaint at 4.

The Plaintiff also filed a separate Memorandum of Law (docket entry #51), which adds detail. Plaintiff explains that Defendant Oyebade (former John Doe #1) was the picket officer on the Michael Unit at the time of the alleged assault and that Defendant Sherbert (former John Doe #2) was the floor officer responsible for ensuring that inmates did not congregate in the day room and for conducting roster checks at the cells. Plaintiff details his injuries as a result of the alleged assault, including lacerations and abrasions to his eyebrows, scalp and head in general, swollen eye(s), a swollen right knee, and post-traumatic stress disorder from the incident. *Memorandum* at 1-3. Plaintiff alleges in his lawsuit that defendant Foxworth acted with deliberate indifference to substantial risk of serious harm, and that defendants Oyebade and Sherbert violated his 1st, 8th and 14 amendment rights.

On May 20, 2014, the Court conducted an evidentiary hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider Plaintiff's claims. He testified and restated the same facts alleged in his original Complaint and Memorandum. He asserts that he had filed a grievance with Warden Foxworth that his life was in danger prior to the assault incident. He later explained that the reason for his concern and his grievance to the Warden is that he had previously acted as an informant on several occasions, identifying both inmates and serving correctional officers who had committed violations of prison regulations or law. As a result of the information he provided, certain inmates had been disciplined and some of the officers had been fired.

Previously, he had been held in a protective area in a low-risk unit. At the Michael Unit, however, he was held in general population. Even when he was in administrative segregation, he was still exposed to individuals who he testified he recognized and would harm him. He testified that his grievance was disapproved despite the fact that he feared he was in danger.

He testified that the individual offenders who assaulted him in the day room were members of the "Bloods" gang. They had approached him in the day room, but he had walked away. A few minutes later, one punched him in the face and others joined in the melee. He was beaten into unconsciousness. He regained consciousness and made it to a table; he later made it back to his cell and laid on the floor. Plaintiff woke up at night in a "puddle of blood." No correctional officers checked on him that night, although there was supposed to have been roster calls at his cell with a positive identification required.

Plaintiff explained he was suing Defendant Warden Foxworth for failing to protect him when he filed a grievance as to his life endangerment after being placed in general population at the Michael Unit. He stated that after he filed his grievance, he was placed in Building 11 for a period of time and an investigation carried out, but that "insufficient evidence of life endangerment" was the result, despite his prior activity as a prisoner informant, and his grievance denied. He also stated he was suing Oyebade and Sherbert for failure to protect during the assault and for failing to carry out their duties otherwise.

Following the *Spears* hearing, Plaintiff was permitted to proceed with his claim against Warden Foxworth, Oyebade and Sherbert. The remaining defendants were dismissed. *See* Docket Entry #31. Foxworth and Sherbert filed an answer to the amended complaint on April 10, 2015. *See* Docket Entry # 84. Oyebade filed an answer on May 11, 2015. *See* Docket Entry # 90.

## II. STANDARD ON SUMMARY JUDGMENT

Rule 56(a), Fed. R. Civ. P., provides that the Court may only grant a motion for summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *First American Title Ins. Co. v. Continental Cas. Co.*, - - - F.3d - - - -, 2013 WL 757655, at *2 (5th Cir. Feb. 28, 2013) (quoting Fed.R.Civ.P. 56(a)); *VRV Development L.P. v. Mid-Continent Cas. Co.*, 630 F.3d 451, 455 (5th Cir. 2011) (same). The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. *Id*. Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Id*.

Summary judgment is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *Honore v. Douglas*, 833 F.2d 565 (5th Cir. 1987). The district court must look to the full record, including the pleadings, affidavits, and depositions. *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Under this standard, fact questions are considered with deference to the nonmovant. *Reid v. State Farm Mutual Automobile Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The evidence of the nonmovant is to be believed and all justifiable

inferences are to be drawn in his favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986). The court resolves factual controversies for purposes of summary judgment in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little*, 37 F.3d at 1075. The court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1048 (5th Cir. 1996) (citing *Little*, 37 F.3d at 1075).

"The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. An issue is "genuine" if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inference in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of the party. *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A "material fact" is one that might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. "When the moving party has carried its burden under Rule 56(c),[1] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (footnote omitted).

Further, in that this is a civil rights claim pursuant to 42 U.S.C. § 1983, "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury

---

[1] The predecessor to the current Rule 56(a).

5

traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lemons v. Swann*, 412 Fed. Appx. 672, 673 (5th Cir. 2011) (per curiam); *see also Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990).

## III. DISCUSSION AND ANALYSIS

The law governing the exhaustion of administrative remedies is 42 U.S.C. § 1997e. In 1996, Congress enacted the Prison Litigation Reform Act, which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court accordingly unanimously concluded that inmates must exhaust their administrative remedies before proceeding to federal court. *Booth v. Churner*, 532 U.S. 731, 741, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001). The Supreme Court subsequently held that exhaustion is mandatory and is required for all actions brought by prisoners. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). Later, the Supreme Court reiterated that exhaustion is mandatory and will not be excused when an inmate fails to timely exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006). Exhaustion also requires that a prisoner satisfy the requirement of "proper exhaustion." *Id*. at 83. Most recently, the Supreme Court stated in *Jones v. Bock*, 549 U.S. 199, 211, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007), that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Failure to exhaust is an affirmative defense under the PLRA, and inmates are not required to specifically plead or demonstrate exhaustion in their complaints. *Id*. at 216. Subsequently, the Fifth Circuit added that after *Jones v. Bock*, a complaint is still subject to dismissal for failure to state a claim where the prisoner's failure to exhaust appeared on the face of the complaint. *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007); *Torns v. Mississippi Dept. of Corrections*, 301 Fed. Appx. 386, 388-89 (5th Cir. 2008) (per curiam).

The Fifth Circuit restated that "the PLRA pre-filing exhaustion requirement is mandatory and non-discretionary," *Gonzalez v. Seal*, 702 F.3d 785, 787 (5th Cir. 2012) (per curiam); *Moussazadeh v. Texas Dept. of Criminal Justice*, 703 F.3d 781, 788 (5th Cir. 2012) (quoting *Gonzalez*), and that "district courts have no discretion to waive the PLRA's pre-filing exhaustion requirement," *Gonzalez*, 702 F.3d at 788. Having reaffirmed the mandatory nature of exhaustion in *Gonzalez*, the Fifth Circuit again noted that "'failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.'" *Id*. at 788 n.1; see also *Jones*, 549 U.S. at 216, 127 S. Ct. 910. The Fifth Circuit did not retreat from its position in *Carbe*, *supra*, that a complaint is still subject to dismissal where the prisoner's failure to exhaust appears on the face of the complaint.

**A.    Defendants' Motion for Summary Judgment**

Defendants Foxworth, Oyebade and Sherbert filed a motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies (docket entry #89) on May 11, 2015. In support of the motion, they attached the relevant portions of the Plaintiff's TDCJ Grievance Records, consisting of Grievance Numbers 2013156060, 2013182014 and 2013191316.

Grievance Number 2013156060 was filed a month before the incident which is the subject of this lawsuit on June 3, 2013. The Plaintiff was confined at the Walls Unit at the time. He asserted that his life was in danger and that he wanted to be placed in safekeeping or protective custody. In response, Walls Unit Assistant Warden Joe Smith specified that his claims had been investigated and that there was insufficient evidence that his life was in danger. The grievance was denied.

Grievance Number 2013182014 was filed on July 16, 2013, immediately after the incident on July 15, 2013. The Plaintiff specified that he notified Lt. Brown that he had been assaulted. He complained that Lt. Brown would not conduct an offender protection investigation ("OPI"). He added

that "staff has failed to follow policy and therein failed to comply with ACA standards, approved by the T.B.C.J." In response, Assistant Warden Dewberry observed that Lt. Brown, in fact, conducted an OPI on July 16, 2013. Lt. Brown's report was reviewed by the Unit Classification Committee and it was determined that there was sufficient evidence to substantiate the Plaintiff's claims; thus, a unit transfer was recommended. Plaintiff was removed from the Michael Unit on August 7, 2013. Warden Dewberry thus found that the transfer resolved the issue.

Plaintiff filed a Step 2 grievance on September 14, 2013. He specified that he was filing the Step 2 grievance to exhaust the issue. The response, dated October 22, 2013, concluded that he was appropriately advised at the Step 1 level.

Grievance Number 2013191316 was filed on July 16, 2013. Plaintiff did not name any individuals in this grievance, but he refers generally to the events of July 15, 2013. In this grievance, he states that "the purpose of this grievance is to expose the conditions which allowed me to be assaulted by five inmates on the Michael Unit....the understaffing on this unit is far reaching, and reaches a gross and total disregard for the lives and safety of the offenders living in these conditions". Plaintiff further explains that "this grievance is not about me being assaulted....it is about the gross conditions that allowed it to happen without it being noticed by staff". He concludes the grievance by requesting to be placed back in protective custody or on a small unit. In response, Assistant Warden Dewberry replied that the issue was previously addressed through Step I Grievance #2013182014, in which an Offender Protection Investigation was completed and Plaintiff was transferred to another Unit of Assignment.

B.     **The Plaintiff's Response**

Plaintiff filed two responses to the Motion for Summary Judgment (docket entries # 94 and #95). In the first response, he addresses the answer to the complaint filed by the Defendants and states

8

that his complaint puts the defendants on notice of the claims for which he is suing them. He also attached a copy of his grievances, but does not specifically address the grievances or how they served to exhaust his claim. *See* Response at 1. He does not address the defendant's motion for summary judgment.

In his second response, Plaintiff again attached copies of his grievance forms.. *See* Attachments to Supplemental Response (docket entry # 95). Plaintiff further claims that he did not receive a copy of one of the grievances because the grievance "goes deeper than TDJC wants exposed". *See* Supplemental Response at 4. Plaintiff states that the attached copies of the grievances prove that he exhausted his administrative remedies, without specifically addressing the arguments made in the motion for summary judgment. Plaintiff further states that TDJC is deliberately housing him in unsafe areas "in hopes of someone taking me out and making this suit moot." *See* Supplemental Response at 5. Plaintiff argues that TDJC has removed the Grievance Manual from the law library so that he is unable to research the grievance procedure more thoroughly. *See* Supplemental Response at 6. Plaintiff also stated that he made requests to be housed in a safe area to TDJC officials throughout the past years. *See* Response at 6. He further stated that he has "told lie after lie" in order to be moved in the past. *See* Response at 7.

### C. Discussion and Analysis

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party for summary judgment has the burden of proving the lack of a genuine dispute as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985).

If the movant satisfies its initial burden of demonstrating the absence of a material fact dispute, then the non-movant must identify specific evidence in the summary judgment record demonstrating that there is a material fact dispute concerning the essential elements of its case for which it will bear the burden of proof at trial. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The non-movant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988). Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant must present evidence sufficient to support a resolution of the factual disputes in his favor. *Anderson*, 477 U.S. at 257. The non-movant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004).

The Defendants have filed a motion for summary judgment based on the Plaintiff's failure to exhaust his administrative remedies. The law governing the exhaustion of administrative remedies is 42 U.S.C. § 1997e. The Supreme Court has held that the PLRA requires "proper exhaustion," meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford*, 548 U.S. at 88.

The Court reiterated that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). It was added, however, that the "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Id.* at 216.

Following *Jones*, the Fifth Circuit discussed how the exhaustion question should be handled in *Dillon v. Rogers*, 596 F.3d 260 (5th Cir. 2010). The following guidelines were provided:

> As a final matter, we now provide a brief summary of how district courts should approach exhaustion questions under the PLRA. When the defendant raises exhaustion as an affirmative defense, the judge should usually resolve disputes concerning exhaustion prior to allowing the case to proceed on the merits. If the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary.

*Id.* at 272-73. The Fifth Circuit expressly stated that "district courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

The Texas Department of Criminal Justice provides a two-step procedure for processing grievances and provides inmates with detailed instructions on how to file grievances. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). An inmate must complete both a Step 1 and Step 2 grievance in order to properly exhaust his administrative remedies. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). Proper exhaustion is required, meaning the prisoner must not only pursue all available avenues of relief, but must also comply with all administrative deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 89-95, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). The Fifth Circuit has interpreted this requirement to mean that mere "substantial compliance" with administrative remedy procedures does not satisfy exhaustion; instead, prisoners are required to exhaust administrative remedies properly. *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010). A grievance must be pursued through all available steps of the process to be considered exhausted. Johnson, 385 F.3d at 515. The Fifth Circuit upheld the grant of summary judgment where the competent summary judgment evidence revealed that grievances tendered by a Texas prison inmate were returned as unprocessed because he did not follow prison guidelines for filing grievances and

thus had not exhausted his administrative remedies. *Stout v. North-Williams*, 476 Fed. Appx. 763, 765 (5th Cir. 2012). Proper exhaustion is determined by reference to the state grievance procedures. *Jones*, 549 U.S. at 217-18; *Patterson*, 547 F. App'x at 511.

Warden Foxworth correctly observed that the post-attack grievance does not mention Foxworth, Sherbert or Oyebade. Instead, it mentions only Lt. Brown. He argues that the Plaintiff did not adhere to the requirements of Section 501.008 of the Texas Government Code, which establishes a statutory requirement that inmate grievance procedures be exhausted against all named parties before a subsequent suit is initiated in court. *See Riddle v. TDCJ-CID*, No. 13-05-00054-CV, 2006 WL 328127, at *2 (Tex. App. - Corpus Christi Feb. 9, 2006, pet. denied) ("Riddle did not exhaust the grievance procedures for those individuals named in the claim who were not named in the grievance. Thus, Riddle did not fulfill all statutory procedural requirements.").

Warden Foxworth's reliance on state law and the decision of a state appellate court is not dispositive. In examining the PLRA's exhaustion requirement, the Supreme Court specifically rejected a "name all defendants" requirement. *Jones*, 549 U.S. at 217. The Fifth Circuit thus reversed a decision by the Eastern District of Texas accepting a "name all defendants" requirement. *Patterson v. Stanley*, 547 F. App'x 510, 511 (5th Cir. 2013) ("Nothing in the PLRA requires prisoners to identify all defendants that they later sue."). Instead, "under the PLRA, a prisoner 'must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and for many types of problems this will often require, as a practical matter, that the prisoner's grievances identify individuals who are connected with the problem.'" *Id.* at 512 (citing *Johnson*, 385 F.3d at 522). "However, a grievance may sufficiently identify a person even without providing a name." *Id.; see also Johnson*, 385 F.3d at 523.

In the present case, the Plaintiff made the following complaint at Step 1 in Grievance Number 2013182014:

> I informed Lt. Brown that I had been assaulted on L Pod, one section. The Lt. told me to go back to my pod, that she didn't do O.P.I.'s on inmates. I have been beat down, and I now have the scars and marks to prove it. Both of my eyes are almost swolen [sic] shut at this time. The video footage will show I played no part in the assault. Your staff has failed to follow policy and therein failed to comply with ACA standards, approved by the T.B.C.J.

Warden Dewberry interpreted the grievance as a claim under the Safe Prison Program and concluded that the issue was resolved due to his transfer to another unit. The grievance concerns Lt. Brown's failure to provide for the Plaintiff's safety after the attack. It does not relate to the actions of Warden Foxworth, and Officers Oyebade and Sherbert. The grievance does not satisfy the exhaustion requirement.

The Plaintiff fares no better with respect to Grievance Number 2013156060. That grievance was filed on June 3, 2013, more than a month before the incident which is the subject of the present lawsuit. The Plaintiff complained that his life was in danger. At the time, he was confined at the Walls Unit, as opposed to the Michael Unit. Walls Unit Assistant Warden Joe Smith responded to the grievance. Warden Foxworth persuasively argued that this life endangerment grievance filed while the Plaintiff was housed at the Walls Unit did not place him on notice of the problem that would form the basis of the lawsuit.

Grievance Number 2013156060 did not exhaust the Plaintiff's claims pending before the Court for a more basic reason - the timing does not work. The grievance was filed **before** the incident which is the subject of this lawsuit. The grievance does not show that Plaintiff exhausted his administrative remedies with respect to the events that occurred on July 15, 2013.

Finally, Grievance Number 2013191316 was filed on July 16, 2013. Plaintiff did not name any individuals in this grievance, and refers generally to the events of July 15, 2013 and alleges that he is not safe within TDJC. He blames "understaffing" and states that "the purpose of this grievance is to expose the conditions which allowed me to be assaulted by five inmates on the Michael Unit". He concludes the grievance by requesting to be placed back in protective custody or on a small unit. In response, Assistant Warden Dewberry replied that the issue was previously addressed through Step I Grievance #2013182014, in which an Offender Protection Investigation was completed and Plaintiff was transferred to another Unit of Assignment. This grievance is too general to serve as notice to any of the named defendants, and is too vague to administratively exhaust these claims.

Plaintiff's responses do not address his failure to exhaust his administrative remedies. It is evident here that Plaintiff's grievances did not give prison officials an opportunity to resolve Plaintiff's claims against Defendants Foxworth, Sherbert, or Oyebade through the administrative process, as required by the Prison Litigation Reform Act. Plaintiff failed to exhaust his administrative remedies with respect to the claims actually pending before the Court. Foxworth, Oyebade and Sherbert are entitled to summary judgment limited to the Plaintiff's failure to exhaust his administrative remedies.

Plaintiff has not established a genuine dispute as to Defendants' affirmative defense that he has not exhausted his administrative remedies. Because Plaintiff did not exhaust his administrative remedies, his instant lawsuit is thus precluded. Therefore, Defendants are entitled to summary judgment on that affirmative defense. Failure to exhaust administrative remedies is a failure to state a claim upon which relief may be granted. Thus, Plaintiff's instant lawsuit must be dismissed as unexhausted.

It is accordingly

**ORDERED** that Defendants' Motion for Summary Judgment on Plaintiff's Failure to Exhaust Administrative Remedies (docket entry #89) is hereby **GRANTED**. It is further

**ORDERED** that Plaintiff's complaint is hereby **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1). Plaintiff shall take nothing as a result of this lawsuit. It is further

**ORDERED** that the parties are to bear their own costs and fees. It is further

**ORDERED** that the defendant's Motion to Seal (docket entry # 86) is **GRANTED**. It is further

**ORDERED** that the defendant's Motion to Substitute Attorney (docket entry # 108) is **GRANTED**. It is finally

**ORDERED** that any motion not previously or otherwise ruled on herein is hereby **DENIED**. **SIGNED this 18th day of March, 2016.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE